## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

ETC SUNOCO HOLDINGS LLC                )
(formerly known as SUNOCO, INC.),       )
                                                           )
                              Plaintiff,               )
                                                           )
              v.                                        )         Case No. 3:20-cv-2981
                                                           )
UNITED STATES OF AMERICA,        )
                                                           )
                              Defendant.            )

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND .......................................................................................................... 1

II.   ARGUMENT ............................................................................................................... 4

    A.   The Government Has Not Established That Collateral Estoppel Should Apply. ............... 4

        1.   Changes in Law Render Collateral Estoppel Inapplicable. ............................................ 4

        2.   Present Circumstances Would Render Preclusion Inappropriate and Unfair, and
             Violate the Policy of Tax Uniformity among Taxpayers. .................................................. 8

    B.   The Government's Concerns Over Forum Shopping Are Misplaced. .............................. 12

III.  CONCLUSION ........................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ammex, Inc. v. United States*,
384 F.3d 1368 (Fed. Cir. 2004) ........................................................................13

*Anderson, Clayton & Co. v. United States*,
562 F.2d 972 (5th Cir. 1977) ...................................................................... *passim*

*Arkla, Inc. v. United States*,
37 F.3d 621 (Fed. Cir. 1994) ............................................................................13

*Bank, Tr. Div. v. United States*,
740 F.2d 382 (5th Cir. 1984) ........................................................................4, 8

*Cent. Pines Land Co. v. United States*,
274 F.3d 881 (5th Cir. 2001) .............................................................................7

*Commissioner v. Sunnen*,
333 U.S. 591 (1948) ................................................................................... *passim*

*Copeland v. Merrill Lynch & Co.*,
47 F.3d 1415 (5th Cir. 1995) .............................................................................4

*Delek US Holdings, Inc. v. United States*,
No. 3:19-cv-00332, 2021 U.S. Dist. LEXIS 13255 (M.D. Tenn. Jan. 25, 2021) .............3, 7, 8

*Divine v. Commissioner*,
500 F.2d 1041 (2d Cir. 1974) ............................................................................8

*EEOC v. American Airlines, Inc.*,
48 F.3d. 164 (5th Cir. 1995) ..............................................................4, 8, 10, 12

*Eng'rs Club of Philadelphia v. United States*,
42 F. Supp. 182 (Ct. Cl. 1942) ........................................................................11

*Exxon Corp. v. United States*,
45 Fed. Cl. 581 (Fed. Cl. 1999), *rev'd in part and affd in part*, 244 F.3d 1341
(Fed. Cir. 2001) ......................................................................................11, 12

*Exxon Mobil Corp. v. United States*,
Civil Action No. 3:16-CV-2921-N, 2018 U.S. Dist. LEXIS 149760 (N.D. Tex.
2018) ................................................................................................... *passim*

*Gandy Nursery, Inc. v. United States*,
318 F.3d 631 (5th Cir. 2003) .............................................................................8

*Hibernia Nat.'l Bank, Tr. Div. v. United States,*
    740 F.2d 382 (5th Cir. 1984) ............................................................. 4, 8

*Hicks v. Quaker Oats Co.,*
    662 F.2d 1158 (5th Cir. 1981) ............................................................. 8

*Estate of Hunt v. United States,*
    309 F.2d 146 (5th Cir. 1962) ............................................................. 14

*Montana v. United States,*
    440 U.S. 147 ............................................................. 4, 6, 7

*Petro-Hunt, L.L.C. v. United States,*
    365 F.3d 385 (5th Cir. 2004) ............................................................. 6, 7, 8

*Recoveredge L.P. v. Pentecost,*
    44 F.3d 1284 (5th Cir. 1995) ............................................................. 9

*Sunoco, Inc. v. United States,*
    129 Fed. Cl. 322 (2016) ............................................................. 2, 8, 12, 13

*United States v. Alcan Aluminum Corp.,*
    990 F.2d 711 (2d Cir. 1993) ............................................................. 14

*United States v. Little Lake Misere Land Company,*
    412 U.S. 580 (1973) ............................................................. 7

*United States v. Nebo Oil Co.,*
    90 F. Supp. 73 (W.D. La. 1950), *aff'd,* 190 F.2d 1003 (5th Cir. 1951) .............................. 6, 7

*United States v. Stauffer Chem. Co.,*
    464 U.S. 165 (1984) ............................................................. 7, 9, 10

*United States v. Stauffer Chem. Co.,*
    684 F.2d 1174 (6th Cir. 1982), *aff'd,* 464 U.S. 165 (1984) .................................... 10

**Statutes**

28 U.S.C. § 1346 ............................................................. 13

28 U.S.C. § 1402(a)(2) ............................................................. 13

**Other Authorities**

Grover Hartt II. & Jonathan L. Blacker, *Judicial Application of Issue Preclusion in Tax Litigation: Illusion or Illumination,* 59 TAX LAW 205 (2005)...................................9

Bouvier Law Dictionary ...........................................................................................................13

Restatement (Second) of Judgments, § 28...........................................................................11, 12

## I.   **INTRODUCTION**

Collateral estoppel is an equitable doctrine founded on principles of fairness, and it "must be used with its limitations carefully in mind so as to avoid injustice." *Commissioner v. Sunnen*, 333 U.S. 591, 599 (1948). In federal tax cases, "strong policy considerations favor confining narrowly the scope of collateral estoppel," including "the policy of tax uniformity among taxpayers." *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 992 (5th Cir. 1977). The Government's motion for summary judgment does not heed these warnings, and it seeks to broadly apply collateral estoppel to create an unfair result, unsupported by law. Specifically, the Government misrepresents the applicable standard to apply collateral estoppel, overlooking the presently uncertain legal climate and potential pending major change in law that will obviate use of the doctrine. These changes are not merely theoretical: briefing in currently docketed appellate cases, which will clarify controlling law in this Circuit and which could upend legal treatment to all affected taxpayers nationwide, will commence in the next two months. Applying collateral estoppel at this stage of the dispute could lead to Sunoco being held to a legal result different from every other taxpayer facing the same issue; all because the Internal Revenue Service ("IRS") refused to extend the statute of limitations during which Sunoco had to file this case. The substantial possibility of this disparity presents special circumstances that make application of collateral estoppel inappropriate and unfair in this case. For these reasons, the Government's motion for summary judgment should be denied.

## II.   **BACKGROUND**

1.   Sunoco performed fuel blending activities that qualified it for the Alcohol Fuel Mixture Credit under I.R.C. § 6426 during its 2010 and 2011 tax years. Based on its position that the Alcohol Fuel Mixture Credit should not reduce the amount of federal excise taxes it paid for

purposes of calculating taxable income, Sunoco submitted claims for refund of U.S. federal income taxes on amended tax returns, Forms 1120X, for tax years 2010 and 2011 on March 10, 2015. The IRS subsequently denied the claims on March 11, 2015 when it issued a notice of disallowance. *See* Compl. ¶¶ 19-21, ECF No. 1; Answer ¶ 19-21, ECF No. 15.

2.      In *Sunoco, Inc. v. United States*, 129 Fed. Cl. 322 (2016) ("*Sunoco I*"), Sunoco brought an action in the Court of Federal Claims for a refund of U.S. federal income taxes for its tax years 2005 to 2008. *See* Br. in Supp. of Def.'s Mot. Summ. J. 4, ECF No. 19-1.

3.      *Sunoco I* did not include Sunoco's refund claims for its 2010 and 2011 tax years (the years at issue here) because, at the time of filing *Sunoco I*, Sunoco was awaiting potential adjustments to those years on account of Section 45O tax credits, which are related to qualified agricultural chemicals security expenditures. Ex. A, Whitehurst Decl.¶ 4, App. 002.

4.      Prior to the filing of the Complaint in this case, the IRS and Sunoco reached several agreements to extend, until September 28, 2020, the statute of limitations period under I.R.C. § 6511(c) for Sunoco's 2010 and 2011 tax years. *See* Compl., Ex. B. Sunoco tried to procure an additional extension so that this case would not need to be filed prior to the legal question being finally determined in this Circuit. However, the relevant Government officials refused. Ex. B, Patel Decl. ¶ 2, App. 005. Thus, Sunoco had to initiate this action.

5.      Sunoco filed its Complaint on September 25, 2020 with this Court, the U.S. District Court for the Northern District of Texas, seeking a refund of income taxes related to treatment of the Alcohol Fuel Mixture Credit. *See* Compl.

6.      In *Exxon Mobil Corp. v. United States*, Exxon similarly sought an income tax refund based on treatment of the Alcohol Fuel Mixture Credit under I.R.C. § 6426. *See Exxon Mobil Corp. v. United States*, No. 3:16-CV-2921-N, 2018 U.S. Dist. LEXIS 149760 (N.D. Tex.

Aug. 8, 2018). On August 8, 2018, this district denied Exxon's motion for partial summary judgment and granted the United States' cross-motion for partial summary judgment with respect to the application of I.R.C. §§ 4081 and 6426. *See Id.*

7.      Exxon filed a Notice of Appeal on April 9, 2021, to appeal the determination with respect to the application of I.R.C. §§ 4081 and 6426. Notice of Appeal, *Exxon*, No. 3:16-cv-2921, ECF No. 296. *Exxon* is currently docketed in the U.S. Court of Appeals for the Fifth Circuit and the opening brief is to be filed by July 21, 2021. *See* Clerk Order Granting Motion to Extend Time to File Appellant's Brief, *Exxon*, No. 21-10373 (5th Cir. filed May 28, 2021).

8.      In *Delek US Holdings, Inc. v. United States*, Delek similarly sought an income tax refund based on treatment of the Alcohol Fuel Mixture Credit under I.R.C. § 6426. *See Delek US Holdings, Inc. v. United States*, No. 3:19-cv-00332, 2021 U.S. Dist. LEXIS 13255 (M.D. Tenn. Jan. 25, 2021). On January 25, 2021, the U.S. District Court for the Middle District of Tennessee, Nashville Division, denied Delek's motion for summary judgment and granted the United States' cross-motion for summary judgment with respect to the application of I.R.C. §§ 4081 and 6426. *Id.*

9.      Delek filed a Notice of Appeal on March 18, 2021, to appeal the district court's determination with respect to the application of I.R.C. §§ 4081 and 6426 to the Sixth Circuit. Notice of Appeal, *Delek*, No. 3:19-cv-00332. *Delek* is currently docketed in the U.S. Court of Appeals for the Sixth Circuit and the opening brief is to be filed by August 30, 2021. *See* Briefing Letter, *Delek*, No. 21-5257 (6th Cir. filed June 22, 2021).

10.     On May 5, 2021, the Government filed a motion for summary judgment arguing that the doctrine of collateral estoppel should bar Sunoco from litigating this case. Def.'s Mot. Summ. J., ECF No. 19.

## II.    ARGUMENT

**A.  The Government Has Not Established That Collateral Estoppel Should Apply.**

In the Fifth Circuit, collateral estoppel "is an equitable doctrine which should be 'applied only when the alignment of the parties and the legal and factual issues raised warrant it.'" *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (citing *Nations v. Sun Oil Co. (DELAWARE)*, 705 F.2d 742, 744-45 (5th Cir.) (en banc), *cert. denied*, 464 U.S. 893 (1983)). It should not be applied where "controlling legal principles could render a previous determination inconsistent with prevailing doctrine." *See Montana v. United States,* 440 U.S. 147, 161(1979). Further, like all equitable doctrines, collateral estoppel is based on principles of fairness. *See EEOC v. American Airlines, Inc.*, 48 F.3d. 164, 167 (5th Cir. 1995) (explaining that one of three elements for application of collateral estoppel is that "special circumstances must not exist which would render preclusion inappropriate or unfair."). In tax cases, where "collateral estoppel has a somewhat narrower application," *Hibernia Nat.'l Bank, Tr. Div. v. United States*, 740 F.2d 382, 387 (5th Cir. 1984), it should not be applied where it may prematurely defeat tax uniformity, *i.e.,* the fundamental notion underlying our tax system that similarly situated taxpayers should be similarly treated. *See Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 992 (5th Cir. 1977) ("[P]erpetuation of an erroneous tax decision over a number of years would prejudice the losing party and violate the policy of tax uniformity among taxpayers.").

### 1.   Changes in Law Render Collateral Estoppel Inapplicable.

Collateral estoppel cannot apply where ultimately controlling legal principles render a prior decision at odds with prevailing law. In *Commissioner v. Sunnen*, 333 U.S. 591 (1948), the Supreme Court addressed the limits of the collateral estoppel doctrine in a case involving the federal tax treatment of intra-family assignments of income. In a prior proceeding, the Board of

Tax Appeals analyzed the taxpayer's income tax liability for the 1929 to 1931 tax years, and determined that he was not subject to tax on royalty income from a 1928 license agreement assigned to the taxpayer's wife. *Sunnen*, 333 U.S. at 596. The Tax Court, in a subsequent proceeding involving the 1937 to 1941 tax years, applied collateral estoppel to bar a different result in that subsequent suit, which involved a new license agreement that was identical in material respects to the agreement in the earlier action. *Id.* However, since the earlier determination, a series of cases had clarified the tax treatment of intra-family assignments and transfers. *Id.* at 602-03. The Supreme Court found that the clarification and growth of this body of cases constituted a sufficient change in legal climate to render the doctrine of collateral estoppel inappropriate. *Id.* at 606-07. Accordingly, the Supreme Court overruled the Tax Court's decision and declined to give collateral estoppel effect to the prior judgement because there was, among other things, a change in controlling legal principles. *Id.* at 607. The Court explained that collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and *applicable rules* remain unchanged." *Id.* at 599-600 (emphasis added).

In reaching that holding, the *Sunnen* Court highlighted the threat that collateral estoppel poses to uniform application of laws to taxpayers. The Court explained that where a subsequent change or development in controlling legal principles may make a prior determination obsolete or erroneous, applying collateral estoppel would treat one taxpayer differently than other taxpayers of the same class. *Id.* at 599. The resulting "inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and . . . fertile basis for litigious confusion" are not justified by the doctrine of collateral estoppel. *Id.* Issue preclusion "is not meant to create vested

5

rights in decisions that have become obsolete or erroneous with time, thereby *causing inequities among taxpayers*." *Id.* (emphasis added).

Reaffirming *Sunnen*, in *Montana v. United States*, 440 U.S. 147 (1979), the Supreme Court confirmed that collateral estoppel does not apply if there have been "major changes in the law" relevant to the issue in question. *Montana*, 440 U.S. at 161. In that case, the United States brought an action in the United States District Court for the District of Montana challenging the constitutionality of Montana's gross receipts tax. *Id.* at 151. The United States had previously directed and financed unsuccessful litigation brought by a private contractor in the Supreme Court of Montana to challenge the constitutionality of the gross receipts tax. *Id.* In addressing whether the United States was estopped from relitigating the constitutionality issue, the Supreme Court explained that "modifications in 'controlling legal principles' could render a previous determination inconsistent with prevailing doctrine," and that collateral estoppel is not appropriate in those circumstances. *Id.* at 161. The Supreme Court ultimately held collateral estoppel was appropriate because, among other reasons, there had been *no material changes in the law* governing the first determination.[1]

The Fifth Circuit similarly refuses to apply collateral estoppel where there result would conflict with ultimately governing law. In *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004), the Circuit declined to apply collateral estoppel to preclude the United States from relitigating an issue which it had unsuccessfully raised in a prior proceeding. In that prior proceeding, *United States v. Nebo Oil Co.*, 90 F. Supp. 73, 78 (W.D. La. 1950), *aff'd,* 190 F.2d 1003 (5th Cir. 1951), the district court found against the United States on the basis of Louisiana

---

[1] In *Montana*, the United States argued that there had been a change in the controlling facts from the first decision, but failed to argue that there had been a material change in law.

state law. Subsequent cases, however, departed from the holding in *Nebo Oil* and held that Louisiana law did not apply.[2] The Fifth Circuit determined that "collateral estoppel applies to 'pure questions of law' only when there has been *no* 'change in controlling legal principles.'" *Petro-Hunt, L.L.C. v. United State*s, 365 F.3d at 397 (emphasis added). Because *there was a change in controlling legal principles* vis-à-vis the subsequent decisions holding that federal law governed, collateral estoppel was not appropriate. *Id.* at 399.

Here, a potential change in controlling legal principles obviates application of collateral estoppel. *Exxon*, which involves the same issue as this case and a taxpayer performing the same activities as Sunoco, is docketed in the Fifth Circuit and could be decided in favor of the taxpayer. Since this case deals only with a pure issue of law, a decision by the Fifth Circuit in *Exxon* in favor of the taxpayer could create "major changes in the law"[3] that modify the "controlling legal principles" for this case and "could render a previous determination inconsistent with prevailing doctrine."[4] *See Montana*, 440 U.S. at 161. Moreover, *Delek,* which also involves a taxpayer

---

[2] In *United States v. Little Lake Misere Land Company*, 412 U.S. 580 (1973), the Supreme Court reversed the district court opinion, finding that the state law was hostile to the interests of the United States and could not provide appropriate standards of federal law. Moreover, the court found that the state law did not serve legitimate and important state interests that would justify the application of the state law in the case.

In *Cent. Pines Land Co. v. United States*, 274 F.3d 881 (5th Cir. 2001), the Fifth Circuit, taking a cue from the Supreme Court's *Little Lake Misere* decision, ruled that state law did not apply and that federal choice-of-law principles applied.

[3] While a change in law has not yet occurred in this case, it would be premature to apply collateral estoppel at this stage given the pendency of a potential change. Furthermore, as discussed below, special circumstances arise in tax cases such as this one, where there may be an acute need for a Supreme Court decision to prescribe a national standard for treatment of the Alcohol Fuel Mixture Credits, and Sunoco may be treated differently than other taxpayers who received the credit.

[4] As discussed in Sunoco's motion to stay, there is currently no controlling law in the Fifth Circuit. *See* Pl.'s Mot. to Stay Proceedings and Br. in Supp. ¶¶ 16-17, ECF No. 20.  The Supreme Court warns against the application of collateral estoppel when a Court of Appeals has adopted a rule contrary to the original decision. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 178 (1984) (White, J., concurring) ("Extending preclusion to circuits that have adopted a contrary rule on the merits would be acceptable were it supported by any affirmative policy. It is not. . . . At least some measure of consistency and certainty is obtained by evenhanded application of rules within individual circuits.").

7

performing the same activities as Sunoco and addresses the same issue litigated in this case, is currently docketed in the Sixth Circuit. A decision for the taxpayer in either *Delek* or *Exxon* would create a Circuit split and likely lead to the Supreme Court addressing this issue. *See Divine v. Commissioner*, 500 F.2d 1041, 1049 (2d Cir. 1974) ("In federal tax cases disputed questions of law are satisfactorily resolved *only* by U.S. Supreme Court decisions . . . . [T]he decisions of a U.S. Court of Appeals are not habitually reviewed by the Supreme Court [and] the *granting of certiorari is often withheld until two or more circuits have adopted conflicting positions*."). A decision by the Supreme Court for the taxpayer would be the exact major change in the law referenced by the Court in *Montana*, similar to both *Sunnen* and *Petro-Hunt*, rendering *Sunoco I* inconsistent with the prevailing doctrine.

Collateral estoppel applies only where the ultimately controlling law does not render prior determinations "obsolete or erroneous." *See Sunnen*, 333 U.S. at 599. Because the doctrine has a narrow application in cases involving federal tax issues, *see Hibernia*, 740 F.2d at 387, it should not apply in the uncertain legal climate currently present in this case before other imminent decisions will clarify the prevailing law, *see Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1167 (5th Cir. 1981) (collateral estoppel "would not apply where there was a change in controlling legal principles between the two decisions.").

### 2. Present Circumstances Would Render Preclusion Inappropriate and Unfair, and Violate the Policy of Tax Uniformity among Taxpayers.

For collateral estoppel to apply, four conditions must be met: (1) "the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action;" (2) "the issue must have been fully and vigorously litigated in the prior action;" (3) "the issue must have been necessary to support the judgment in the prior case;" and (4) "*there must be no special circumstances that would render preclusion inappropriate or unfair.*" *Gandy Nursery, Inc. v.*

8

*United States*, 318 F.3d 631, 639 (5th Cir. 2003) (emphasis added); *see also EEOC v. American Airlines, Inc.*, 48 F.3d 164, 167 (5th Cir. 1995). The Government inexplicably omits any discussion of this important fourth prong in its motion for summary judgment. Instead, in a footnote, the Government explained that this fourth prong "originated as a limitation on *offensive* collateral estoppel," and presumably because "[o]ffensive collateral estoppel is not involved here," there was no need to address it. *See* Br. in Supp. of Def.'s Mot. Summ. J. 9 n.35 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). This position contradicts not only Supreme Court precedent, but also Fifth Circuit law and the observations of the Government's own counsel, both of which are set forth in a 2005 article prepared by counsel:

> Although *Parklane Hosiery* specifically sanctioned the use of offensive collateral estoppel, this fairness factor *seemingly applies in both offensive and defensive (mutual and non-mutual) collateral estoppel cases*. In *EEOC v. American Airlines, Inc.*, 48 F.3d. 164 (5th Cir. 1995), the Fifth Circuit was presented with a classic case of defensive or traditional collateral estoppel. The Court explained that before collateral estoppel can apply, "special circumstances must not exist which would render preclusion inappropriate or unfair." *Id.* at 167. *See also Recoveredge L.P. v. Pentecost*, 44 F.3d 1284, 1290 n. 12 (5th Cir. 1995) (applying the "fairness" analysis in an offensive collateral estoppel situation);[5] *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1170 (5th Cir. 1981) (noting that "considerations of fairness are of great importance in determining when use of offensive collateral estoppel should be permitted").

Grover Hartt II. & Jonathan L. Blacker, *Judicial Application of Issue Preclusion in Tax Litigation: Illusion or Illumination*, 59 TAX LAW. 205, 212 n.35 (2005) (emphasis added).

Special circumstances are present in this case and, consequently, applying collateral estoppel is inappropriate and unfair. The Supreme Court, in *United States v. Stauffer Chem. Co.*, 464 U.S. 165 (1984), considered whether special circumstances were present in a case of

---

[5] In *Recoveredge*, neither party alleged that special circumstances would render preclusion inappropriate or unfair and the court did not independently identify a special circumstance. The court, which was analyzing a case of traditional estoppel and not offensive estoppel, nonetheless explained that "recent decisions list the fairness requirement as a general requirement for the application of issue preclusion." *Recoveredge L.P. v. Pentecost*, 44 F.3d 1284, 1290 n. 12 (5th Cir. 1995).

traditional collateral estoppel to determine whether the United States could pursue a case in the Sixth Circuit after it had previously lost a case involving the same facts and issues of law in the Tenth Circuit.[6] In a concurring opinion, Justice White explained that where a circuit split "grants a special benefit to, or imposes a special detriment on, particular companies," the "mere fact that these companies happen to have been involved in litigation elsewhere" is not a sufficient reason to perpetuate "favored or disfavored status" through "misapplication of collateral estoppel." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 179 (1984) (White, J., concurring). In the preceding Sixth Circuit Court of Appeals case, Judge Siler also expressed serious concern with the inequities that would occur if Stauffer's competitors were held to a different standard and explained that "where several different cases involving the same issues are being litigated simultaneously in separate circuits, collateral estoppel should not be invoked. Thus, collateral estoppel, although legally applicable, is not appropriate here." *United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1192 (6th Cir. 1982) (Siler, J., concurring), *aff'd*, 464 U.S. 165 (1984).

As explained above, the Supreme Court in *Sunnen* highlighted similar potential inequities ever present in the question of whether to apply collateral estoppel to a tax case. The results of improper application of collateral estoppel "are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion." *Sunnen*, 333 U.S. at 599. The Fifth Circuit, like the Supreme Court, understands the significance of collateral estoppel in tax cases and stated "that strong policy considerations favor confining narrowly the scope of collateral estoppel in tax cases." *Anderson, Clayton & Co. v. United States*,

---

[6] The Fifth Circuit applied the holding in *Stauffer* specifically to government agencies, stating that "[t]he Supreme Court has decisively rejected attempts by *government agencies* to avoid the bar of issue preclusion in order to litigate repetitively against the same defendant on virtually the same facts." *EEOC v. Am. Airlines*, 48 F.3d 164, 171 (5th Cir. 1995) (emphasis added) (citing *United States v. Stauffer Chem. Co.*, 464 U.S. 165 (1984)).

562 F.2d 972, 992 (5th Cir. 1977).[7] Before arbitrarily applying collateral estoppel, courts must

consider the possible implications that their decision could violate tax policy and treat similarly

situated taxpayers disparately.[8] "The most persuasive policy consideration in the [tax] context is

that perpetuation of an erroneous tax decision over a number of years would prejudice the losing

party and violate the policy of tax uniformity among taxpayers." *Id.*

Collateral estoppel is an equitable doctrine that should be applied with restraint. *Exxon

Corp. v. United States*, 45 Fed. Cl. 581, 610 (Fed. Cl. 1999), *rev'd in part and affd in part*, 244

F.3d 1341 (Fed. Cir. 2001) (explaining that the "doctrine of collateral estoppel is not a blunt,

ponderous tool given to indiscriminate application."). Relitigation of a previously determined issue

in a subsequent action between the parties should be permitted where "[t]he issue is one of law

and . . . a new determination is warranted in order to . . . *avoid inequitable administration of the

laws* . . . ." Restatement (Second) of Judgments, § 28 (emphasis added). Understanding the

importance of advancing fair and equal tax policy, the Restatement puts a finer point on this

concept: "it can be particularly significant that one of the parties is a government agency

responsible for continuing administration of a body of law that affects members of the public

generally, as in the case of tax law. Refusal of preclusion is ordinarily justified if the effect of

applying preclusion is to give one person a favored position in current administration of current

---

[7] In *Anderson*, the taxpayer attempted to preclude litigation of an issue which had been resolved in an earlier
suit by concession. The Court found that collateral estoppel did not apply because the issue was conceded
by the government and therefore not fully litigated. *Anderson, Clayton & Co. v. United States*, 562 F.2d
972, 992-93 (5th Cir. 1977).

[8] *See also Eng'rs Club of Philadelphia v. United States*, 42 F. Supp. 182, 187 (Ct. Cl. 1942) (in declining
to apply res judicata, the U.S. Court of Federal Claims explained "[w]e are asked, then, to close our eyes
and minds to the facts actually before us, and to give plaintiff a judgment which we would not give to any
other plaintiff whose cause of action had equal merit. We are asked thus to discriminate with regard to a
public and recurring duty, the duty to pay taxes, thus setting plaintiff apart from all other taxpayers who
resort to this court with similar cases.").

law."[9] *Id.* at Comment c, at 278. The problem with premature application of collateral estoppel "is illustrated by the situation where a taxpayer's liability for tax in a certain transaction in one tax year is determined according to a particular interpretation of the tax law, and that interpretation is thereafter abandoned in favor of another interpretation. *If issue preclusion is applied in a subsequent tax year, the taxpayer will receive treatment different from that accorded to other taxpayers similarly situated at that time.*" Restatement (Second) of Judgments, § 28 (emphasis added).

Depending on how the currently docketed cases are decided, premature application of collateral estoppel in this case could result in binding Sunoco to a law other what is ultimately determined to be the prevailing law of the land. By precluding Sunoco's claim based on the decision in *Sunoco I*, this court would bar Sunoco from obtaining a refund for the 2010 and 2011 tax years while other similarly situated taxpayers may obtain refunds for the exact same claims, violating the principles of sound tax policy and creating a circumstance that "would render preclusion inappropriate or unfair." *EEOC v. American Airlines, Inc.*, 48 F.3d. at 167. Given the narrow application of collateral estoppel in tax cases, the need to maintain tax uniformity presents special circumstances that make application of collateral estoppel inappropriate. *Anderson, Clayton & Co. v. United States*, 562 F.2d at 992.

**B.  The Government's Concerns Over Forum Shopping Are Misplaced.**

Lastly, the Government claims with little support or justification that Sunoco is attempting a "second bite at the apple" and engaging in forum shopping by bringing this case in the Fifth

---

[9] The Comments & Illustrations to section 28 of the Restatement further elaborate that reexamination of an issue that is otherwise precluded "is particularly appropriate when the application of the rule of issue preclusion would impose on one of the parties a *significant disadvantage, or confer on him a significant benefit, with respect to his competitors.*" Restatement (Second) of Judgments, § 28  (emphasis added).

Circuit. Def.'s Resp. to Pl.'s Mot. to Stay 6, ECF No. 23. The Government's claim is wrong and mischaracterizes both the facts and the meaning of forum shopping. Forum shopping is a term of art and, as generally understood, requires deliberate examination of multiple courts or jurisdictions, an exploitation of differences amongst the courts, and purposeful availment of a specific jurisdiction because of favorable laws or institutional advantages.[10] None of these factors are present in Sunoco's case.

The Government fails to articulate on what basis Sunoco has engaged in forum shopping. The choice of litigating in the Fifth Circuit was not determined on the basis of either favorable precedent or perceived strategic advantages. Indeed, the legal framework in this Circuit is still developing. The basis for bringing the claim in this jurisdiction is because Sunoco now resides in this jurisdiction and the Federal Rules of Civil Procedure dictate that this is an appropriate forum. *See* 28 U.S.C. §§ 1346 and 1402(a)(2). The Government agrees. Answer ¶ 8.

Further, the litigation of separate taxable years in a different forum was not a strategic choice by Sunoco and the Government's reliance on *Ammex* to support this assertion is unfounded. In *Ammex, Inc. v. United States*, 384 F.3d 1368 (Fed. Cir. 2004), the taxpayer had filed refund suits for different taxable periods in district court and the Court of Federal Claims, *simultaneously*, although they could have consolidated the refund suits in a single action. Unlike *Ammex*, Sunoco has not filed simultaneous suits for different taxable periods and did not have the luxury of bringing a single action. At the time of filing *Sunoco I* in the Court of Federal Claims relating to Sunoco's 2004 through 2009 tax years, Sunoco was awaiting adjustments to its 2010 and 2011 tax years.

---

[10] *See Forum Shopping*, *Bouvier Law Dictionary* ("Forum Shopping is the practice by both plaintiffs and defendants of seeking to bring a claim or transfer an action to the forum the litigant believes is the most likely to favor its own argument. Such favoritism might be perceived because of objective differences in the law of the forum, such as a longer or shorter period of limitations or more or less favorable rules governing the plaintiff's standing.").

Thus, these tax years could not be included in *Sunoco I*, and Sunoco has not had its day in court for the 2010 and 2011 tax years.[11] "Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action." *Sunnen*, 333 U.S. at 598, *see also Estate of Hunt v. United States*, 309 F.2d 146, 147 (5th Cir. 1962) ("Income tax liability for any one year is a single cause of action and each taxable year constitutes a separate cause of action[.]").

Despite the Government's contentions that "Sunoco opted to file the present suit" while *Exxon* was pending,[12] Sunoco could not wait until the *Exxon* decision clarified the controlling law in this Circuit before it filed the present case. This was not a strategic move on Sunoco's part. Although Sunoco was able to obtain extensions of the statute of limitations for the 2010 and 2011 tax years from the IRS through September 28, 2020, the IRS refused further extensions. The only option available to Sunoco was to file the present case prior to the expiration of the statute of limitations. If it did not, Sunoco risked forfeiting its refund claims while other similarly situated taxpayers were able to obtain refunds based on the exact same position with respect to treatment of the Alcohol Fuel Mixture Credit. The Government's assertion that this case was brought for strategic reasons is disingenuous and unavailing.[13]

---

[11] The Government also cites to *Arkla, Inc. v. United States*, 37 F.3d 621 (Fed. Cir. 1994) in support of its forum shopping claim. In *Arkla*, the Federal Circuit granted preclusive effect to a decision previously rendered by the Fifth Circuit where no material facts or relevant law had changed. Despite the taxpayer's efforts to re-characterize the underlying issue, the court found that the differences were not material and had no bearing on the dispositive issue. Here, the potentially forthcoming changes in the legal landscape as well as the principles of fairness and tax uniformity weigh against collateral estoppel.

[12] Def.'s Resp. to Pl.'s Mot. to Stay 9-10. Further, there is little advantage to applying collateral estoppel in terms of judicial economy, where, as here, the issues are purely legal. *See, e.g.*, *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) ("where pure questions of law -- unmixed with any particular set of facts -- are presented to a court, the 'interests of finality and judicial economy may be outweighed by other substantive policies.'") (internal citations omitted).

[13] The Government's counsel also omitted key events that occurred prior to the filing of its motion for summary judgment. The Government first approached Sunoco in this case with respect to its request for an extension to file its Answer, which Sunoco did not oppose. After the Government obtained the extension and filed its Answer, Sunoco sought to continue the spirit of cooperation and approached the Government to file a joint motion to stay pending the decision in *Exxon*. It was at that point that the Government, for the

At bottom, Sunoco did not file this lawsuit to forum shop or to gain a "second bite at the apple"; it filed the suit because it was the only way to keep Sunoco's refund claims from expiring while courts conclusively determine how to treat the Alcohol Fuel Mixture Credit. Sunoco's preference was and continues to be to conserve its resources, as well as the Government's and this Court's, while earlier-filed proceedings clarify federal law on the threshold tax issue, which should apply uniformly to all taxpayers who earn the credit.

### III.   CONCLUSION

The Government's motion for summary judgment does not establish that collateral estoppel should apply to bar Sunoco's suit.

WHEREFORE, Sunoco respectfully requests that this Court deny Defendant's motion for summary judgment.

---

first time, informed Sunoco of its intent to file an imminent motion for summary judgment based on its collateral estoppel argument. Sunoco explained its position to the Government, including that it was unnecessary to address the collateral estoppel issue if *Exxon* was decided in the United States' favor. Shortly after those initial conversations, the Government declined to join Sunoco's forthcoming motion for a stay and promptly filed its motion for summary judgment on that same day—i.e., May 5, 2021—rather than wait to learn how the Court would rule on Sunoco's motion to stay. To be clear, the Government knew that Sunoco intended to seek a stay when it filed its motion for summary judgment. Ex. B, Patel Decl. ¶¶ 3-5, App. 005 – App. 006. Much like the Government's statements with respect to the fourth prong of the collateral estoppel determination and its assertions for why Sunoco brought this suit while *Exxon* was pending, the Government's statement that "it was only when the United States filed its dispositive motion, that [Sunoco] sought to delay resolution of this suit" is insincere and deceitful. Def.'s Resp. to Pl.'s Mot. to Stay 9-10.

Dated: July 6, 2021

Respectfully submitted,

 /s/ Vivek A. Patel
Vivek A. Patel
D.C. Bar No. 1033178, *Pro hac vice*
Vivek.Patel@bakermckenzie.com
George M. Clarke III
D.C. Bar No. 480073, *Pro hac vice*
George.Clarke@bakermckenzie.com

BAKER & MCKENZIE LLP
815 Connecticut Avenue NW
Washington, DC 20006
(202) 835-6184

Robert H. Albaral
Texas Bar No. 00969175
Robert.Albaral@bakermckenzie.com

BAKER & MCKENZIE LLP
1900 North Pearl Street
Dallas, TX 75201
(214) 978-3044

**ATTORNEYS FOR PLAINTIFF
ETC SUNOCO HOLDINGS LLC
(f/k/a SUNOCO, INC.)**

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served upon all counsel of record upon its filing via this Court's CM/ECF electronic case filing system on July 6, 2021.

<u>/s/ Vivek A. Patel</u>
Vivek A. Patel

**17**